Tuhley, J.
delivered the opinion of the court.
In the year 1S17, Eliza R. Gardner, daughter of Henry Gardner, was married to Samuel G. Chester, in the State of North Carolina. In the year 1818, Henry Gardner departed this life, having previously made and published his last will and testament by which he devised to his daughter, the said Eliza, two slaves, Sam and Maria; to another daughter, Emily, two slaves, Ben and Esther; to his wife Catherine, the one half of the residue of his estate, both real and personal, during her natural life or widowhood, and at her death, the whole of his estate to his said two daughters Eliza and Emily, share and share *28 alike to them, their heirs and assigns forever; but in case of their death without issue, with limitation over to his sister Elizabeth and her heirs forever. To this will the said Catherine, Eliza, and Emily were appointed Executrixes. Upon the death of Henry Gardner, Samuel G. Chester and his wife Eliza, received into possession the two negroes given to her absolutely by the will. In 1831, Catherine, the wife of Henry Gardner and mother of Eliza R. Chester, departed this life, and the property devised to the said Eliza and her sister Emily upon the happening of that event, was divided by mutual consent between them, each taking possession of their respective portions; in making this division, Chester and wife sold and conveyed a portion of the land belonging to the wife under the will, to her sister, in satisfaction of a balance in her favor upon the division of the negroes. This deed bears date the 12th of March, 1832, and from that period, Chester and wife had the uninterrupted possession of the negroes in dispute up to his death, which happened sometime in the month of June, 1841. On the 19th day of July, 1839, Samuel G. Chester executed a deed of trust to James L. Sparks, upon the negroes received by him in right of his wife under the will of Henry Gardner, and upon his real estate in Washington County, Tennessee, to secure Samuel Greer and Jacob Hartsell from loss, by reason of their liability as his endorsers in Bank, with power to the Trustee, to expose the same to public sale in Jonesborough, upon ten days notice, to reimburse any payments that said Greer and Hartsell might have to make for said Chester as his said endorsers. This deed of Trust was not proven and registered until after the death of Chester in 1841. Nothing was known of its existence to any one but the parties and the subscribing witnesses. In the interval between its execution and probate, Chester contracted debts with others, which remain unpaid, and for the satisfaction of which there is no other property than that specified in the deed of trust. Samuel Greer, one of the beneficiaries, was on several occasions enquired of as to whether he had any mortgage or encumbrance upon Chester’s property, and always answered that he had not, and that in his opinion persons might contract debts with him in safety.
*29 Upon the death of Chester, Greer & Hartsell caused the deed of Trust to be registered. Greer administered upon his estate, took possession of the negroes, but did not return them in the inventory. And afterwards Hartsell having assumed the debts in Bank, for which they were liable as Chester’s endorsers, they afterwards procured the Trustee to expose the land and negroes to public sale according' to the terms of the trust, and became themselves the purchasers by their agent for a sum much less than the actual value of the property then sold; and thereupon Eliza Chester files her bill claiming dower in the real estate conveyed by the deed of trust, and - the right to the possession of the negroes against the trust as executrix of the will of her deceased father, Henry Gardner; and J. M. and J. C. Greenway, file their bill as creditors of Samuel G. Chester in their own name and in behalf of his other creditors, asking that the deed of trust be declared fraudulent, and void against such creditors, and if this cannot be done, that the sale made under the trust be set aside for illegality, the cestuis que trust not being warranted by law in becoming the purchasers at their own sale, and that a new sale be ordered, subject to the legal rights of all persons interested therein.
Upon this statement of facts, several questions are presented for the consideration of this Court, arising out of the claims of Mrs. Chester as presented in her bill, and those of the creditors of Samuel G. Chester as presented in the bill of J. M. and J. C. Greenway.
On the part of Mrs. Chester.
1st. Is she entitled to dower out of the land, conveyed in the deed of trust? We are of the opinion that she is not. By the provisions of the act 1784, ch. 22, sec. 18, a widow isendowa-ble of the one third part of all the lands, tenements and hered-itaments of which her husband died seized and possessed. Did Samuel G. Chester die seized and possessed of the lands conveyed by him in the deed of trust? It is contended that he did, because the deed of trust not having been registered at the date of its execution, can only have effect from the date of its registration, which being subsequent to his death, it necessarily follows, that he did die so seized and possessed.
*30 The fallacy of this argument consists in the assumption that the deed of trust was operative and effective between the parties only from the date of its registration. By the 1st sec. of the act of 1831, p. 90, it is required that deeds for the absolute conveyance of lands, mortgages, deeds of trust, &c., shall be acknowledged by the party executing the same, or be proven by two subscribing witnesses and be thereupon registered. By the 4th sec. of the same act it is provided that instruments so proven and registered shall take effect only from the time they are registered, and any deed of conveyance or other instrument .which shall be last executed but first registered, shall have preference unless it is proved that such subsequent purchaser had full notice of the previous conveyance, and that the liens of judgments and executions shall have preference to any deed or .other instrument not registered at the time the lien of said judgment or execution attached. This section makes provision for the cases of conflicting purchasers and judgment creditors, and postpones an unregistered deed though of prior execution to the deed of a subsequent purchaser without notice which has been registered, and to judgment creditors, whose judgments have been obtained before such registration, and does not purport to affect the relation as existing between the vendor and vendee by the execution of the deed which has not been registered as is required by the 1st section of .the act. The 12th section provides that all such deeds and other instruments mentioned in the 1st section, and not proven and registered as is required, shall be null and void as to existing and subsequent creditors and bona fide purchasers without notice. This section also leaves the relation of the parties to the deed unaffected by the neglect to register according to the provisions of the act.
What then is the operation of an unregistered deed as between the parties? It has been held in North Carolina and repeatedly in this State, that it conveys an inchoate legal title, which may at any time be made perfect by registration, and this by relation from the date of the deed. And this registration may be procured by the vendee in the deed without the knowledge or consent of the vendor, and either during his life *31 or after. It necessarily follows, that as between Chester and the Trustee in this deed of trust, the freehold in the lands conveyed was passed by relation upon the registration of the deed from the day of its date, and that of consequence, Chester did not die seized or possessed of the premises so as to entitle his widow to dower therein under the act of 1784. 2nd. It is contended that Chester never had possession of the ne-groes conveyed by said deed of trust in his own right, but only in the right of his wife as executrix of the will of her father. It is true that the assent of an executor to a legacy must be obtained before it can be legally reduced to possession by the legatee; but this assent need not be expressly proven; it may be implied from the circumstances attending the transaction, and this as well where the legatee is executor, as where he is not. Under all the circumstances of this case we cannot hesitate in saying that these negroes were reduced to the possession of Chester not in the right of executor, but as legatee, and with the knowledge and assent of the executor: the settlement and division of the estate between the two Sisters upon the death of their mother, and the great length of time which has elapsed since, render any other conclusion preposterous and absurd. 3rd. It is contended that the limitation over of the negroes to Elizabeth Rhodes the sister of Henry Gardner the devisor, upon the death of Mrs. Chester and her sister Emily without issue, is a good limitation, and that therefore she holds the negroes in trust for this limitation, that Chester acquired no marital right to them, and of consequence could convey none by the deed of trust. To this objection there are two satisfactory answers. 1st. The limitation over is void for remoteness. We deem it unnecessary to enter into a minute investigation of this perplexed and perplexing question. It has been again and again examined by our Courts, and it has been invariably held that a limitation depending upon an indefinite failure of issue, whether created by deed or will, is void; and that a limitation resting upon the death of an individual without issue, is such an indefinite fa.il-ure. We will, however, examine two cases which have been relied on as supporting a contrary position, with the view of showing their inapplicability.
*32 The 1st, is the case of Didlake vs. Hooper, 1st Virginia Rep. 194. The clause of the will out of which the controversy arose in that case was as follows: — “Item. To my son Jeremiah Hooper during his life, one hundred acres of land: I do lend him three negroes during his life, and if he should have lawful issue, I give the land and negroes to them at his death; and if he should die without issue, I give the whole of the property, that I have lent to him to Sarah and Judith Hooper.” This was held to be a good limitation, and manifestly because it does not rest upon an indefinite failure of issue, but a failure at the death of the devisee Jeremiah Hooper. The property is loaned to him for life, and if he have lawful issue, it is given to them at his death; if he died without issue, it is then limited over to Sarah and Judith Hooper — his death then is the period which is to determine whether the limitation is to vest or not. If he have issue, the property is absolutely theirs; if not, it belongs to Sarah and Judith Hooper.
The other is the case of Jackson on the demise of St. John vs. Chew, 12th Wheaton Rep. 153. That case was this: Medcef Eden devised to his son Joseph, certain portions of his real and personal property to have and to hold to him, his heirs, executors and administrators, forever. In like manner he devised to his son Medcef, his heirs and assigns, certain other portions of his property and added the following clause: — “Item. It is my will and I do order and appoint, that if either of my sons should depart this life without lawful issue, his share or part shallgo to the survivor.” Joseph died in August, 1812, without issue, leaving his brother Medcef alive,and the question was what estate Joseph took under the will, and it was held to be an estate in fee defeasible in the event of his dying without issue in the life time of his brother, and that the limitation over was good as an executory devise. It is to be observed of this case, that Justice Thompson who delivered the opinion of the Court, rests it upon the decisions of the Supreme Court of New York, from whence it came. He says: — “It is not deemed necessary in the present case to enter into an examination of the various decisions upon the question, either for the purpose of attempting to reconsider them, or to extract from them principles, which *33 might be applicable to the case before the Court, if the question was considered entirely an open question. The enquiry is very much narrowed by applying the rule which has uniformly governed this Court, that where any principle establishing a rule of real property, has been settled in the State Courts, the same rule will be applied by this Court. The enquiry then is, whether the question arising in this case has been so settled in the State Courts of New York, as to be considered at rest there,” and upon examination of the decisions of that State upon the point it was held so to have been settled. It is further to be observed, that the correctness of the decision manifestly rests upon the word “survivor” used in the devise to the testator’s sons, thereby limiting the failure of issue to the period of the death of one or the other, upon the happening of which event the estate in the whole of the property became indefeasible in the survivor, so that the limitation did not rest upon an indefinite failure of issue, and in this respect was similar to the case of Jackson vs. Blanshaw, 3d John. Rep. 289, where the testator devised all his estate real and personal to his six children, to be equally divided between them share and share alike, but if any of them diedbefore arriving at full age, or without lawful issue, that then, his, her or their part should devolve upon and be equally divided among the surviving children, and to their heirs and assigns forever. In that case, Chief Justice Kent reviewed some of the cases in New York and England upon this subject, and held the devise over to be a good executory devise, because it was to take effect upon a failure of issue at the death of the first taker, and not upon an indefinite failure of- issue. These two cases then are not applicable, as has been insisted, to the one now under consideration, and strengthen instead of weaken the view we have taken of it. But 2nd, if it were otherwise, and the limitation over were good, Mrs. Chester would take under the will an absolute interest, in the negroes devised to her by the will of her father, defeasible upon the happening of the event upon which the limitation over depended, to wit, her dying without issue. This would not constitute her a trustee for the benefit of the executory devise, but she would have a legal title to the negroes to which the marital right would attach, and *34 ■which her husband might well convey by the deed of trust. 4th. It is contended that in as niuch as Mrs. Chester joined her husband in the sale and conveyance of her real estate, she is thereby entitled to charge her husband’s estate with the value thereof, and to have satisfaction thereof in her own right as against the deed of trust, and the creditors of her husband. This principle we cannot recognize as law; if the wife consents to the sale ofher real estate and joins her husband in a conveyance of it, made according to the forms of law, without an understanding or agreement, that the proceeds are to be held, or vested for her use, or that she is to be remunerated out of the. estate of her husband, all her interest in the estate is gone, and her husband holds the consideration for which it was sold in his own absolute right, discharged from any claim of hers paramount to his. These constitute all the grounds upon which Mrs. Chester’s right to relief in this case is rested. 'We have examined them with as much care as time and circumstances would permit, and as has been seen, find nothingin them to warrant us in giving her relief.
On the part of J. M. & J. C. Green way, who file their bill in behalf of themselves and the other creditors of Samuel G. Chester, it is contended,
1st. That the deed of trust is void as to them for want of registration in proper time, these debts having been contracted before the registration of the deed.
To this it is answered that though by the provisions of the 12th section of the act of 1831, ch. 90, all deeds and other instruments mentioned in the first section of the act and not registered as is therein provided for, are void as to existing or subsequent creditors, yet by this is meant judgment creditors, and not creditors in pais; that J. M. & J. C. Green way, the complainants who file the bill, are not from their own shewing judgment creditors of Samuel G. Chester, but if creditors at all, creditors in pais, and that no other person claiming to be such judgment creditor, has applied to be admitted to prosecute his claim under the bill; and that therefore, they have no right to question the deed, for want of registration in due time, they not being protected by the Statute. Such are the facts of the *35 case, and the objection to the relief sought is in our opinion unanswerable. We know of no case where creditors are protected against fraudulent or unregistered deeds in which it has been held, that other than judgment creditors are entitled to claim the benefit of such protection. No man can be recognized as a creditor until he has established his right to claim in that character by a judgment at law ora decree in chancery; and to permit suits in equity to set aside deeds for fraud or want of registration in behalf of persons so claiming before the right has been thus established, would be to encumber Courts of Chancery with endless litigation, to compel them to adjudicate contracts cognisable only at law, and in many instances, to determine the fact of indebtedness, before the question of fraud in the execution of the deed, or the want of registration could be adjudicated. Such is not, as it ought not to be, the law. The authorities to this point are numerous, 10th Yerger, 133, Woods vs. McGavock. 15th Johnson, 571, Murray vs. Riggs. 2nd Lomax, Dig. 367-8, and the authorities cited.
2nd. It is contended on the part of the creditors, that the deed of trust, is void for fraud on the part of the cestui que trust, in this, that it appears that one of them, Samuel Greer, upon being interrogated as to whether he had a mortgage or trust upon the property of Chester, denied that he had and asserted that he was solvent, and that persons might contract debts with him in safety. It is difficult to justify this conduct on the part of Greer, but still it does not affect his rights under the deed of trust as the case is presented to our consideration. The complainants, from their own shewing are not in a condition to take advantage of this objection for two reasons. 1st. They are as we have already held creditors in pais, having neither judgments against Chester, nor liens upon the property conveyed in the deed of trust. In Coote on Mortgages 16th Law Library 185, it is said the right of priority may be lost by fraud, as if A. being about to lend money to B. informs C. of his intention, and asks C. whether he has any incumbrance on B’s estate, and C. denies that he has any, whereby A. is induced to lend his money to B., and it proves that C. had at the time an existing mortgage or judgment on A’s estate, this is a fraud on *36 the part ofC., and his security shall be postponed to that of C. Mr. Story in his Treatise on equity jurisprudence page 392, sec. 390, says: — “If a person having an encumbrance or security upon an estate suffer the owner to procure additional money upon the estate by way of lien or mortgage, concealing his prior encumbrance or security, he shall be postponed to the second encumbrancer. Thus if a prior mortgagee knows that another person is about to lend money on the mortgaged property, should deny that he had a mortgage, he would be postponed to the second mortgagee who should lend his money on the faith of the representation so made.” The authorities to this point are numerous, and are refered to by Coote and Story at the pages of their works above quoted. These authorities prove that the fact of misrepresentation, although a debt in pais may be contracted under it, will not vitiate the lien acquired by the mortgage or deed of trust, but that to have that effect a subsequent lien must be acquired upon the same property by the debtor, contracting under the mistake induced by the false information thus communicated to him. But 2nd., it is necessary to fix the fraud upon the prior encumbrancer that he should be informed of the intention of the person making the enquiry to lend money upon the credit of the encumbered property, for otherwise the fraudulent intention is wanting, and the mere falsehood is not sufficient for such purpose. Coote on Mortages, 185. 2nd Vernon 554, 1st Vernon 136, 2nd Vernon 151. Such is not the case with any creditor in the case under consideration so far as the proof shows. 3rd. It is contended that the purchase of the property by the cestuis que trust, under the sale made by the trustees was illegal and voidable, they not being permitted to bid at their own sale, they having the control of it, and their interest being directly at variance with that of the creditors of Chester, they being interested in getting the property at as low a rate as possible, and the creditors, in its commanding the highest possible prices; and so we think; but can make no decree upon the subject, in as much as we hold that none of the parties complainant in this transaction, as they are at present situated have the right to come into a Court of Chancery upon this subject. But it has been said that the defen *37 dants have not appealed from the decree in the creditor’s bill, and therefore that they have no right now to object to it. To this it is to be answered, that the want of equity on the part of the creditors is apparent upon the face of the bill; that the bill was demurred to, and the demurrer was overruled by the chancellor, and that a general appeal by the complainants opens the question of jurisdiction upon the demurrer in this Court. We are therefore, upon the whole view of this case, of the opinion that neither the bill of Mrs. Chester, nor the bill of the creditors can be sustained, but they must both be dismissed.